# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DALE HAZELWOOD,                                    Case No. 1:11-cv-684
     Plaintiff                                   Spiegel, J.
                                                   Litkovitz, M.J.

    vs

COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
     Defendant


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI).   This matter is

before the Court on plaintiff's Statement of Errors (Doc. 5), the Commissioner's Memorandum

in Opposition (Doc. 8), and plaintiff's Reply.   (Doc. 9).

## I.   Procedural Background

Plaintiff filed applications for DIB and SSI in December 2008, alleging disability since

December 1, 2008, due to Parkinson's disease and carpal tunnel syndrome (CTS).   Plaintiff's

applications were denied initially and upon reconsideration.   Plaintiff, through counsel,

requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Samuel A.

Rodner.   Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing.   On

October 18, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the

ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2

2004).   Once the claimant establishes a prima facie case by showing an inability to perform the
relevant previous employment, the burden shifts to the Commissioner to show that the claimant
can perform other substantial gainful employment and that such employment exists in the
national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.
1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of
fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security
> Act through December 31, 2013.

> 2. The [plaintiff] has not engaged in substantial gainful activity since December 1,
> 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The [plaintiff] has the following severe impairments: Parkinson's disease (20
> C.F.R. 404.1520(c) and 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,
> Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d),
> 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the
> [plaintiff] has the residual functional capacity to perform a wide range of medium
> work as defined in 20 CFR 404.1567(c) and 416.967(c) in that he can lift and
> carry up to 50 pounds occasionally and 25 pounds frequently predominately with
> his right arm and using his left arm as a guide, he is able to sit and stand and/or
> walk for a total of about six hours each in an eight hour workday, he can only
> occasionally push and pull with his weaker left arm, and he is limited to only
> frequent fingering (fine manipulation) regarding his left hand.

> 6. The [plaintiff] is capable of performing his past relevant work as a forklift
> operator.   This work does not require the performance of work-related activities
> precluded by the [plaintiff]'s residual functional capacity (20 C.F.R. 404.1565
> and 416.965).

> 7. The [plaintiff] has not been under a disability, as defined in the Social Security Act,

from December 1, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f).

(Tr. 15-19).

### C.   Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards.   *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.   *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."   *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)).   *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise

4

supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff raises five assignments of error: (1) the ALJ improperly weighed the medical evidence[1]; (2) the ALJ erred in assessing plaintiff's credibility; (3) the ALJ's finding that plaintiff, who suffers from severe tremors in one arm, was able to perform his past relevant forklift operator work is without evidentiary support; (4) the ALJ's finding that plaintiff could perform work at the medium level for 40 hours a week is contradicted by the VE's testimony; and (5) the ALJ failed to consider plaintiff's carpal tunnel impairment in formulating his RFC.

1.  <u>The ALJ did not err in relying on the opinion of the state agency reviewing doctors in formulating plaintiff's RFC</u>.

Plaintiff contends that the ALJ erred in formulating plaintiff's RFC by placing "great weight" on the medical opinion and RFC assessment of Dr. Klyop[2] while failing "to make any finding as to how much weight [to give] Dr. Rajan's opinions . . . ."  (Doc. 5 at 4).  Plaintiff argues that the ALJ's failure to weigh the opinions of plaintiff's treating physicians, Vivay

---

[1] Plaintiff's brief frames this error as a broad claim that the "ALJ's [decision] is not supported by substantial evidence [because] it relies on a residual functional capacity (RFC) assessment from Dr. Klyop that concedes Hazelwood's ability to use his left hand is impaired for two-thirds of each work day."  (Doc. 5 at 3). However, upon review of plaintiff's argument, it is clear that plaintiff's first error is directed at the weight the ALJ assigned to the opinion evidence of record in formulating plaintiff's RFC.

[2] Gerald Klyop, M.D., reviewed plaintiff's medical file in March 2009 and completed an RFC assessment at the request of the Commissioner.  (Tr. 268-75).  Dr. Klyop opined that plaintiff could occasionally lift/carry up to fifty pounds; frequently lift/carry up to twenty-five pounds; and stand/walk or sit for about six hours in an eight-hour day.  (Tr. 269).  According to Dr. Klyop, plaintiff has some limitations on his left side due to a pill tremor from Parkinson's disease.  *Id.*  Dr. Klyop noted that plaintiff had good muscle strength, but the medical evidence indicated that plaintiff's left side was slightly weaker than the right.  *Id.*  Because plaintiff is right-hand dominant, Dr. Klyop opined that there would only be a slight limitation on his left arm and that plaintiff was limited to only occasional pushing and pulling due to his weaker left arm.  *Id.*  Dr. Klyop also stated that plaintiff could predominantly lift with the right arm and use his left arm as a guide.  *Id.*  Dr. Klyop found no postural limitations and plaintiff's grasp, pinch, and fine coordination were normal, and plaintiff was limited to frequent fingering with his left hand.  (Tr. 270-71).

Rajan, M.D., and Huai C. Pan, M.D., in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), demonstrates that his opinion is not supported by substantial evidence.[3]  Further, plaintiff asserts that the ALJ's decision to give "great weight" to Dr. Klyop's March 2009 opinion is erroneous as it was not based upon a review of the full medical record – specifically, the RFC assessment was completed prior to plaintiff's submission of further records from Dr. Rajan and Dr. Pan.   For the following reasons, the undersigned finds that the ALJ did not err by relying on Dr. Klyop's opinion in formulating plaintiff's RFC.

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely on: treating source, nontreating source, and nonexamining source.   20 C.F.R. §§ 404.1502, 416.902.   A treating source opinion on the nature and severity of a claimant's impairments is generally entitled to the most weight, and the Social Security Administration must give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion."   *Smith v. Comm'r of Soc. Sec.*, 482 F.3d at 875.   This "good reasons" requirement applies only to treating sources.   *Id*. at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him."   *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).

Here, the ALJ placed great weight on and adopted the limitations set forth by the opinion of Dr. Klyop, the non-examining state agency reviewing physician, in finding that plaintiff had the RFC to:

_____

[3]  20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.   The provisions governing

> perform a wide range of medium work as defined in 20 CFR 404.1567(c) and
> 416.967(c) in that he can lift and carry up to 50 pounds occasionally and 25
> pounds frequently predominately with his right arm and using his left arm as a
> guide, he is able to sit and stand and/or walk for a total of about six hours each in
> an eight hour workday, he can only occasionally push and pull with his weaker
> left arm, and he is limited to only frequent fingering (fine manipulation) regarding
> his left hand.

(Tr. 16).   The ALJ explained his determination by noting that the limitations provided by Dr.

Klyop's opinion are "reasonably well supported by and are consistent with the results of a

consultative physical exam performed on [plaintiff] . . . by Dr. Smith[4] on February 16, 2009."

The ALJ also noted that Dr. Klyop's opinion was affirmed by state agency doctor Jerry McCloud

in May 2009.   (Tr. 276).   Further, the ALJ discussed the records and findings from Dr. Rajan

and Dr. Pan, noting that they were incomplete, cursory, and, in Dr. Pan's case, largely illegible.

(Tr. 16-17).

Plaintiff places great emphasis on the ALJ's duty to weigh the opinions of treating

physicians in accordance with applicable regulations in arguing for reversal of the ALJ's RFC

determination.   However, the regulations clearly provide that the ALJ is only required to

analyze the *opinions* of treating physicians and here there are none.   20 C.F.R. §§

404.1527(a)(2), 416.927(a)(2).   While the record includes treatment notes from Dr. Rajan and

Dr. Pan, there are no corresponding opinions from these doctors as to plaintiff's functional

limitations or what he is able to do despite his impairments. Plaintiff has not cited to any portion

of the record containing opinion evidence from his treating physicians.   Without any opinion

evidence from plaintiff's treating physicians, the Court cannot conclude that the ALJ erred by

not applying the factors enumerated in §§ 404.1527(c) and 416.927(c).

---

the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

Plaintiff further asserts that the ALJ erred by giving "great weight" to Dr. Klyop's opinion because it was not based on a complete review of the record.   Plaintiff notes that Dr. Klyop's opinion was generated on March 10, 2009, and that plaintiff later submitted Dr. Rajan's records from June and November 2009 and May 2010 (Tr. 278-79, 293) and Dr. Pan's records from April to June 2008 regarding plaintiff's carpal tunnel surgery and follow-up treatment. (Tr. 282-91).   However, none of the records cited by plaintiff include any statements from plaintiff's treating physicians indicating plaintiff had any functional limitations whatsoever, much less any limitations not accounted for by the ALJ's RFC formulation.   Indeed, the records from Dr. Rajan are focused on switching plaintiff to a more affordable medication (Tr. 278-79) and include plaintiff's report that his tremors "have been about the same" (Tr. 293), and the notes from Dr. Pan simply explain the carpal tunnel procedure (Tr. 282-88); Dr. Pan's follow-up notes are illegible.   (Tr. 289-91).

Plaintiff fails to identify how the later-generated and/or submitted records demonstrate that his functional limitations are greater than those prescribed by Dr. Klyop and accounted for by the RFC.   Without any evidence that the opinion evidence relied upon by the ALJ is contradicted by the record, the undersigned is unable to find fault with the ALJ's decision to rely on it in formulating plaintiff's RFC.

Moreover, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole.   20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).   A review of the medical evidence establishes that Dr. Klyop's opinion is consistent with the other records and supports the ALJ's finding.

---

[4]  William O. Smith, M.D., examined plaintiff in February 2009 for disability purposes.   (Tr. 261-67).

Dr. Rajan's December 2007 examination of plaintiff demonstrated that he had full motor strength and intact sensation despite complaints of tingling, numbness, and tremor in his left arm.   (Tr. 258-59).   Plaintiff consistently reported that his tremors and stiffness had improved with use of medication (Tr. 251-53) and Dr. Rajan characterized plaintiff's Parkinson's symptoms as being fairly controlled, though he noted plaintiff had moderately severe CTS in his left arm.   (Tr. 252).   Post-surgery, plaintiff reported that his carpal tunnel was doing much better but later he reported ongoing pain.   (Tr. 250-51).   Dr. Smith's examination of plaintiff revealed full strength in all extremities and normal grasp, manipulation, pinch, and fine coordination.   (Tr. 262).   There are no observations from any of these doctors that conflict with Dr. Klyop's findings on plaintiff's functional limitations; thus, there is no basis for overruling the ALJ's RFC formulation.[5]

The ALJ is the ultimate decision-maker regarding plaintiff's RFC and must consider the opinions of medical sources and other relevant evidence.   *See* 20 C.F.R. §§ 404.1527(c), 416.927(c), 404.1545, 416.945.   In this case, the ALJ was presented with minimal treatment notes from plaintiff's treating physicians, three consistent medical opinions from Dr. Smith, Dr. Klyop, and Dr. McCloud, and non-contradictory later-submitted evidence.   In determining plaintiff's RFC, the ALJ considered the record as a whole and determined that Dr. Klyop's opinion, which was based on Dr. Smith's examination and affirmed by Dr. McCloud, supported

---

[5] Dr. Klyop also found that plaintiff has a mild limitation with fingering as demonstrated by his difficulty buttoning and unbuttoning during Dr. Smith's examination, which he accounted for by limiting plaintiff to frequent fingering with his left hand.   Plaintiff argues the limitation to "frequent" fingering is inconsistent with Dr. Klyop's findings that plaintiff had no limitations in grasping, pinching, or fine coordination of the left hand.   This argument is without merit and demonstrates plaintiff's misunderstanding of the limitation assigned by Dr. Klyop.   Plaintiff erroneously asserts that the "frequent" limitation would affect him *at least* two-thirds of an average eight hour work day.   However, the regulations define a "frequent" limitation as one that occurs "from one-third to two-thirds of the time."   SSR 83-10.   Thus, Dr. Klyop's assessment of "frequent" fingering means that plaintiff would be limited to

an RFC for a range of medium-work. The ALJ's decision lays out the rationale for giving "great weight" to Dr. Klyop's opinion and sufficiently details the evidence of record, indicating that he complied with the applicable regulations in formulating plaintiff's RFC. In light of the evidence of record and the lack of evidence supporting greater limitations than those accounted for by the ALJ, plaintiff's first assignment of error should be overruled.

2. The ALJ's credibility determination is substantially supported.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773; *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In determining credibility, the ALJ may consider the claimant's testimony of limitations in light of other evidence of the claimant's ability to perform other tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds. *Heston v. Comm'r*, 245 F.3d 528, 536 (6th Cir. 2001).

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual

---

fingering with his left hand for as little as one-third of the workday and not, as plaintiff suggests, *at least* two-thirds

receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Plaintiff contends that the ALJ erred in finding plaintiff's testimony regarding the severity of his left arm and hand tremors "not fully credible," asserting that his testimony was supported by Dr. Smith's evaluation and other evidence of record.[6]   Further, plaintiff claims the ALJ improperly discounted his testimony based on the lack of records from his treating physician, Dr. Rajan.   Lastly, plaintiff argues that the ALJ's failure to properly cite evidence in his decision warrants reversal and remand.   For the following reasons, the undersigned determines that the ALJ's credibility finding is supported by substantial evidence.

Despite plaintiff's assertion, Dr. Smith's examination does not support a finding that plaintiff's claims of disabling left arm tremors are credible.   Dr. Smith observed a tremor but did not render any observation or opinion as to its severity, frequency, or effect on plaintiff's functional abilities.   In contrast, Dr. Klyop opined that plaintiff's tremors impaired his ability to

---

of the day.

[6] Specifically, plaintiff identifies the following as evidence consistent with his claim that he cannot work 40 hours per week due to left extremity tremors: Dr. Smith's observation that plaintiff "has a pill rolling tremor at rest in the left upper extremity" (Tr. 262); notes from an interviewer at the Social Security Administration that plaintiff's left hand shook throughout the interview (Tr. 152); and the VE's testimony that plaintiff's left arm appeared to be shaking during the ALJ hearing.   (Tr. 62).   Notably, none of this evidence contains any medical opinion as to how the left arm tremor affects plaintiff's functional abilities; rather, they are mere observations of its existence.   Further, the VE's testimony is too unintelligible for the Court to concur with plaintiff's assertion that the VE identified that plaintiff's arm was shaking during the hearing.   *See* Tr. 62 (VE: "Like, you can see from what he's doing now, it's like the – if - " ALJ: "Left arm has to be stable."   VE: "Yeah.").

button and grip with his left hand but found that this caused only a mild limitation which limited his left hand fingering ability to "frequent." (Tr. 271). The ALJ reasonably adopted Dr. Klyop's RFC assessment which accounted for plaintiff's supported limitations.

Plaintiff further asserts that the ALJ erred in discounting his credibility on the basis of a lack of treatment records from Dr. Rajan. The Court's review of the record does not support plaintiff's interpretation of the ALJ's decision. Regarding the dearth of records from Dr. Rajan, the ALJ stated:

> Unfortunately, the [plaintiff's] treating neurologist, except for his physical exam on the first visit on December 10, 2007, provides little to no clinical signs after December 10, 2007 up to May 4, 2010. On May 4, 2010, Dr. Rajan uses a "boilerplate" flow sheet form using undefined symbols. The [plaintiff] on May 4, 2010 stated that the tremors were the same as when he last saw Dr. Rajan on November 17, 2009. At that time, the [plaintiff] stated that his tremors come and go, which is consistent with his testimony.

(Tr. 17) (internal citations omitted). There is nothing in this portion of the ALJ's decision from which the Court can reasonably infer that the ALJ discounted plaintiff's credibility due to the scarcity of medical records. Rather, the ALJ explained that Dr. Rajan's notes contained no clinical or objective findings supporting plaintiff's statements. In addition, the ALJ noted that plaintiff's report of occasional tremors to his doctors was inconsistent with his testimony that his tremors are so severe that he is unable to engage in substantial gainful activity. The ALJ's credibility finding in this regard is well-supported.

Likewise unpersuasive is plaintiff's contention that the ALJ's erroneous citation to Exhibit 6E (plaintiff's Work History Report) warrants a remand of this matter. The ALJ stated that "the [plaintiff's] testimony regarding his ability to function is generally inconsistent with the [plaintiff's] adult function report dated January 8, 2009. (Exhibit 6E)." The adult function

report completed by plaintiff is actually found at Exhibit 7E. (Tr. 191-98). Plaintiff contends that the ALJ's failure to cite to the correct exhibit, *i.e.*, Exhibit 7E, warrants reversal as the Court cannot otherwise properly review the ALJ's decision. The undersigned disagrees. When viewed in the context of the ALJ's specific citations to plaintiff's reported functional abilities, it is clear that the ALJ intended to reference Exhibit 7E when referring to plaintiff's adult function report when contrasting plaintiff's testimony with his reported daily activities. *See* Tr. 17-18.[7] As the Court is able to discern that the ALJ's credibility determination was based, in part, on specified inconsistencies between plaintiff's testimony and his reported daily activities, the ALJ's typographical error is harmless and does not warrant reversal. *See Quaite v. Barnhart*, 312 F. Supp.2d 1195, 1199-1200 (E.D. Mo. 2004) (mere typographical errors do not warrant reversal) (citing cases).

Finally, in addition to the above factors, the ALJ also noted that plaintiff's statements of record that he has only occasional left hand pain (Tr. 293) and does not wear a brace or splint (Tr. 41) are inconsistent with his testimony that he has had no relief from his carpal tunnel surgery. (Tr. 41). The ALJ also noted plaintiff's testimony that he experiences soreness but not severe pain in his left extremity and takes no pain medication.[8] (Tr. 50). In light of the inconsistencies between plaintiff's testimony and the evidence of record, the ALJ's credibility determination is substantially supported. *See Sass v. Astrue*, No. 4:09cv2732, 2011 WL

---

[7] Plaintiff testified that he could vacuum, do dishes, mop, make hamburger patties, drive, shop, cook, and do laundry. (Tr. 43-45). In contrast, in his adult function report plaintiff reported that he is unable to clean and never cooks. (Tr. 192-93)

[8] The Court notes that plaintiffs' assertion that the ALJ conceded that his tremors are severe is without support in the record. While plaintiff contends that the ALJ conceded that he "experiences tremors in his left ha[n]d 75% of the time during an 8-hour period" and that his left arm will shake "for 30-90 minutes at a time[,]" (Doc. 5 at 7) a review of the ALJ's decision demonstrates that the ALJ was merely recounting plaintiff's testimony and not making any concessions as to the severity of plaintiff's condition. *See* Tr. 17.

488712, at *10 (N.D. Ohio Feb. 7, 2011) (affirming ALJ's credibility determination where inconsistencies between plaintiff's testimony and evidence of record "cast doubt on the veracity of [p]laintiff's testimony and imply that [p]laintiff may not be as restricted as she purports."). *See also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

In sum, the ALJ considered the relevant evidence of record and the requisite factors as set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c) and Social Security Ruling 96-7p such as plaintiff's daily activities, his statements regarding the severity of his left arm tremor, and medication and treatment for the tremor.   (Tr. 17-18).   The ALJ properly considered plaintiff's subjective complaints in light of the evidence of record and determined that, based on inconsistencies between plaintiff's testimony and his reported daily activities and the lack of objective evidence supporting his statements, plaintiff was less than fully credible.   Though there is some medical evidence supporting plaintiff's testimony, as the Commissioner has properly considered the evidence and identified inconsistencies in plaintiff's testimony, his credibility determination is substantially supported and should not be disturbed by the Court. *Kinsella*, 708 F.2d 1059.   Plaintiff's second assignment of error should be overruled.

3.   <u>The ALJ's determination that plaintiff is able to perform his past relevant work as a forklift operator is substantially supported</u>.

For his third assignment of error, plaintiff argues that because the record lacks evidence "about the demands placed on a forklift operator" the ALJ's finding that plaintiff is capable of performing his past relevant work as a forklift operator is without substantial support in the

14

record.   Plaintiff contends there is no evidence supporting the ALJ's finding that plaintiff could perform his past forklift operator job despite the "uncontrollable tremors in his left arm and hand."   (Doc. 5 at 10).

First, plaintiff's argument is premised on his subjective complaints of "uncontrollable tremors."   Because the ALJ found plaintiff's testimony is not fully credible, a finding this Court recommends be upheld, plaintiff's third assignment of error is not well-taken.

Second, plaintiff's argument ignores the VE evidence in the record.   The VE specifically testified that plaintiff's past work as a forklift operator was described in Section 921.683-050 of the Dictionary of Occupational Titles (DOT).   The DOT sets forth information about jobs (classified by their exertional and skill requirements) that exist in the national economy.   20 C.F.R. §§ 404.1569, 416.969.   The ALJ was permitted to take administrative notice of the "reliable job information" available in the DOT.   *See* 20 C.F.R. §§ 404.1566(d) and 416.966(d). Therefore, plaintiff's contention that there is no evidence in the record about the demands of a forklift operator job is without merit.[9]

Third, in determining whether a plaintiff is capable of performing his past relevant work, an ALJ may rely on a VE's responses to hypothetical questions which incorporate all credible limitations, as the VE is qualified to tailor his opinion to an individual plaintiff's particular RFC. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway Sec'y of H.H.S.*, 987 F.2d 922, 927-28 (6th Cir. 1987)); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168

---

[9]  To the extent plaintiff asks this Court to take judicial notice of plaintiff's description of the physical demands of his forklift operator job (Doc. 5 at 9-10), the Court cannot make vocational findings of fact in the first instance.

(6th Cir. 2009) (quoting *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)).   Here, the

ALJ posed the following hypothetical question to the VE at the ALJ hearing:

> [ALJ]: [A]ssume [a] hypothetical individual [who] can lift 50 pounds occasionally
> and it's up to one third of an 8-hour day . . . 25 pounds frequently, up to
> two-thirds of an 8-hour day, stand and/or walk with normal breaks for a total of
> about 6 hours of an 8-hour workday, sit with normal breaks for a total of about 6
> hours of an 8-hour workday.   And as far as physical limitations are concerned,
> limited to frequent fingering left. . . . [C]ould he do any of his prior jobs . . .?

> [VE]: He could do the forklift job.

(Tr. 57-58).   The ALJ also elicited testimony from the VE that plaintiff's past relevant work as a

forklift operator was classified as medium, unskilled work.   (Tr. 56).

The ALJ's hypothetical question to the VE incorporated all of the medically supported

limitations set forth in plaintiff's RFC.   In response, the VE testified that such an individual

would be able to perform plaintiff's past forklift job, which the VE classified as medium work.

The ALJ was permitted to rely upon such testimony in finding at Step Four of the sequential

evaluation that plaintiff is not disabled.   *Casey*, 987 F.2d at 1235.   Accordingly, plaintiff's third

assignment of error should be overruled.

   4.   <u>The ALJ's finding that plaintiff could perform other full time work is substantially
        supported and not contradicted by the VE's testimony.</u>

Plaintiff asserts for his fourth assignment of error that the ALJ's vocational findings are

erroneous because the ALJ failed to account for all of plaintiff's limitations in presenting his

hypothetical question to the VE.   Further, plaintiff claims that the VE's testimony contradicts

the ALJ's finding that plaintiff could perform full-time work with certain limitations.   Plaintiff

specifically notes that the ALJ failed to account for limitations stemming from his CTS in

making the Step Five vocational findings.   For the following reasons, the Court finds that the

16

ALJ's Step Five determination is supported by substantial evidence.

Plaintiff's contention that the VE "testified that [plaintiff] could not perform any of the jobs identified by the ALJ" (Doc. 5 at 11) is a misreading of the vocational testimony.   At the ALJ hearing, the ALJ presented a hypothetical question to the VE which included all of plaintiff's supported limitations and the VE testified that such an individual would be able to perform plaintiff's previous forklift job.   (Tr. 57-58).   Further, the VE testified that such an individual would be able to perform light unskilled work such as being a fast food worker and medium unskilled work such as being a sweeper/cleaner or production worker.   (Tr. 58-59). Contrary to plaintiff's assertion, the record reflects that the VE plainly testified that plaintiff would be capable of performing these jobs given his RFC.   It was only when the ALJ added a further limitation based on plaintiff's testimony that his left arm shakes for 30 to 90 minutes at a time that the VE qualified her testimony.   The VE testified that if the arm shaking was so debilitating that he could not use the left arm for support, then he would likely be unable to do any of the previously identified jobs.   (Tr. 61).   However, the ALJ discounted plaintiff's credibility and determined that plaintiff has an RFC that includes use of the left arm as a guide. (Tr. 16).   Therefore, the VE's testimony on this point does not erode the vocational base of jobs that plaintiff could perform given his RFC.

Plaintiff's argument fails to recognize that "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."   *Stanley v. Sec'y of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).   *See also Casey*, 987 F.2d at 1235 (ALJ required to incorporate only those limitations accepted as credible in hypothetical to VE).   As noted above, the ALJ's RFC formulation is substantially supported by the examination findings of Dr. Smith and the

17

assessment of Dr. Klyop. The ALJ posed hypothetical questions to the VE which accurately portrayed plaintiff's abilities and limitations as evidenced by these doctors' findings and opinions. *See Varley* v. *Sec'y of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Moreover, there is no medical evidence supporting greater limitations than those reflected in the prescribed RFC formulation. Accordingly, the ALJ's reliance on the VE's testimony, that there exists work in the national economy which plaintiff can perform, is supported by substantial evidence.

For these reasons, the ALJ's determination that plaintiff is capable of performing specific jobs should be affirmed.

5. <u>The ALJ did not err in formulating plaintiff's RFC by declining to account for purported limitations associated with his CTS.</u>

For his final assignment of error, plaintiff contends that the ALJ erred in formulating his RFC by not properly considering the effects of his CTS. In support, plaintiff identifies Dr. Pan's diagnosis of "chronic severe carpal tunnel syndrome" in the left hand "aggravated by work-related activities functionally . . . with loss of grip and pinch strength" (Tr. 282) and Dr. Rajan's diagnosis that plaintiff's CTS is "moderately severe." (Tr. 252). Plaintiff asserts that his testimony that he has experienced no long-term relief from the CTS surgery performed by Dr. Pan, in conjunction with the above diagnoses, demonstrates that the ALJ should have further accounted for this impairment in formulating the RFC and that the ALJ's failure to do so mandates reversal. Plaintiff's argument is not well-taken.

The ALJ determined that plaintiff suffers from non-severe CTS, noting that plaintiff had been diagnosed with CTS but there is "insufficient evidence of [CTS] being a severe impairment for at least 12 continuous months." (Tr. 16). *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

18

The ALJ acknowledged plaintiff's prior statements that the CTS causes him occasional severe pain and his hearing testimony that the CTS surgery performed by Dr. Pan provided him no relief.   (Tr. 17, citing Tr. 41, 293).   Yet, the ALJ determined that the evidence of record fails to establish that plaintiff experiences any limitations from the CTS that are not already accounted for in the RFC.   This finding is substantially supported by the record.   Plaintiff testified that he does not use a splint, brace, or medication to treat his CTS, is able to use his left hand to grasp, can drive and cook with both hands, and is able to vacuum, do laundry and dishes, and mop with the use of his left hand.   *See* Tr. 41-44.   In addition, Dr. Rajan reported that plaintiff was "doing much better" after his CTS surgery.   (Tr. 251).   Thus, the ALJ did not err by failing to account for plaintiff's purported CTS-based limitations in formulating the RFC.   Consequently, plaintiff's fifth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.


Date: 11/27/2012                                   s/Karen L. Litkovitz
                                                   Karen L. Litkovitz
                                                   United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DALE HAZELWOOD,                                      Case No. 1:11-cv-684
      Plaintiff                              Spiegel, J.
                                                     Litkovitz, M.J.

      vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).